Shirley A. STEVENS, Plaintiff,

v.

David H. STOVER, et al., Defendants.

Civ. A. No. 85–2035.

United States District Court,
District of Columbia.

Dec. 20, 1988.

Joseph P. Hart and James L. Coffin of Glassie, Pewitt, Dudley, Beebe & Shanks, P.C., Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., John D. Bates and Michael L. Martinez, Asst. U.S. Attys., Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This suit arises out of events surrounding the arrest of plaintiff, a former Sergeant with the Metropolitan Police Department, by officers of the United States Park Police and the Metropolitan Police Department near the Sousa Bridge in Washington, D.C. on June 22, 1984. As a result of these events, plaintiff filed suit against these officers in their individual and official capacities, the United States, and the District of Columbia for violations of her common law and constitutional rights. During the course of this case's long history, many of the named defendants and the counts originally included in plaintiff's complaint have been dismissed. At this juncture, the only claims that remain are those against the United States for violation of the Federal Tort Claims Act and for equitable relief, and those against Officer Stover, in his individual capacity, for violation of 42 U.S. C. § 1983 and for various common law torts.

Now before the Court are defendants' motions for leave to file an amended answer so as to add the defenses of *res judicata* and collateral estoppel and defendants' motion to dismiss or, in the alternative, for summary judgment. These two

motions are interrelated because defendants premise their latter motion on their contention that collateral estoppel or issue preclusion bars plaintiff from relitigating in this Court the issues of fact decided at the administrative trial plaintiff had before the Metropolitan Police Department Adverse Action Panel ("AAP"); defendants contend that the AAP's findings defeat plaintiff's claims for relief. Although the Court finds defendants' issue preclusion arguments persuasive, the Court will defer ruling on defendants' motion to dismiss or, in the alternative, for summary judgment until after the completion of plaintiff's appeal of the AAP's decision in order to avoid the risk of the Court granting or denying relief on the basis of findings that may be subsequently overturned. The Court will, however, grant defendants leave to amend their answer at this time.

## BACKGROUND

On October 15, 1985, the federal defendants filed a motion to dismiss, or, in the alternative for summary judgment.[1] The federal defendants based this motion on their contention that they had absolute immunity from liability with respect to plaintiff's common law claims and qualified immunity with respect to plaintiff's constitutional claims. On July 15, 1986, this Court issued an Opinion and Order denying the federal defendants' claim to absolute immunity because the Court interpreted Supreme Court precedents as holding that federal officials are entitled to absolute immunity for common law torts only when they are performing discretionary acts within the "outer perimeter" of their line of duty, and found that defendants were performing ministerial rather than discretionary acts when they arrested plaintiff. In addition, the Court denied, without prejudice, the federal officers' claim of qualified immunity because of an insufficient factual record upon which to evaluate the "objective reasonableness" of their conduct. *See Stevens v. Stover*, No. 85–2035 (D.D.C. July 15, 1986).

The federal defendants appealed this Court's denial of immunity on August 14, 1986 and filed an answer to plaintiff's complaint on August 18, 1986. While the federal defendants' appeal was pending, they filed a motion to amend their answer on January 8, 1987, so as to add the defenses of *res judicata* and collateral estoppel and a motion for reconsideration of this Court's decision of July 15, 1986. In their motion for reconsideration, defendants argued that plaintiff was precluded from relitigating issues of fact resolved by the AAP. This Court denied defendants' motion for reconsideration and declined to rule on their motion for leave to amend their answer while their appeal was pending.

On September 29, 1987, the Court of Appeals for this Circuit affirmed in part and reversed in part this Court's decision concerning whether the federal defendants, and in particular Officer Stover, were entitled to immunity. *See Martin v. Malhoyt*, 830 F.2d 237 (D.C.Cir.1987). The primary issue of disagreement between this Court and the Court of Appeals was over whether United States Park officers, as defendant Stover, can ever enjoy absolute immunity from common law tort suits. *Id.* at 248–49. The Court of Appeals rejected a "bipartite scheme" that entitled federal officials to qualified immunity for constitutional torts and absolute immunity for common law torts. *Id.* at 253. Instead, the Court of Appeals adopted a "uniform federal qualified immunity standard" for both constitutional and common law torts. The Court of Appeals did not, however, make a specific finding as to the "objective reasonableness" of Officer Stover's actions and, therefore, his entitlement to qualified immunity because of the inadequacy of the factual record before it. In addition, the Court of Appeals did not consider the § 1983 claim against Officer Stover.

It is important to note that in rejecting a "bipartite" scheme for common law and constitutional torts, the Court of Appeals

---

**1.** For the sake of simplicity, the Court will only discuss the history of this case as it pertains to the claims against Officer Stover and the United States as they are the only defendants that remain in the suit. In particular, the Court's discussion will omit reference to the federal defendants who were in supervisory positions and all of the District of Columbia defendants because they are no longer parties to this suit.

recognized that it was entering an "unsettled" area of the law, and expressed hope that guidance from the Supreme Court would soon be forthcoming. *Id.* at 247. The Court of Appeals was expressly referring to an Eleventh Circuit decision to which the Supreme Court had granted *certiorari;* that case would require the Supreme Court to revisit its decision in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and to provide some guidance as to its "reach." [2] *Id. See Erwin v. Westfall,* 785 F.2d 1551 (11th Cir. 1986), *cert. granted,* 480 U.S. 905, 107 S.Ct. 1346, 94 L.Ed.2d 517 (1987).[3]

Since the decision of the Court of Appeals, the Supreme Court has clarified its holding in *Barr. See Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). The precise question before the Court was whether federal officials are absolutely immune from liability for common law torts committed in the course of their employment without regard to the discretionary nature of their conduct. The Court held that "absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." *Id.* 108 S.Ct. at 584. The Court, however, warned that "[c]onduct by federal officials will often involve the exercise of a modicum of choice and yet be largely unaffected by the prospect of tort liability, making the provision of absolute immunity unnecessary and unwise." *Id.* at 585.

In light of the Supreme Court's recent decision in *Westfall,* the Court finds that if the Court of Appeals were called upon today to consider the applicability of absolute immunity to the common law tort claims against the federal defendants, it would apply a different legal analysis than the one it applied in *Martin v. Malhoyt,* 830 F.2d 237 (D.C.1987). Rather than apply the standard of "objective reasonableness" associated with qualified immunity to the common law tort claims against the federal defendants, the Court of Appeals would have examined whether the acts of the federal defendants were sufficiently discretionary so as to entitle them to absolute immunity.

In its Opinion of July 15, 1986, this Court denied the federal officers' claim of absolute immunity to the common law tort claims brought against them because the act of making an arrest is a ministerial rather than a discretionary function. Because the Court's analysis is consistent with the Supreme Court's holding in *Westfall,* the portion of the Court's Opinion and Order of July 15, 1986 denying the officers absolute immunity to suit for common law torts will stand.

After the Court of Appeals issued its Opinion, the federal defendants filed a new motion to dismiss or, in the alternative, for summary judgment on February 3, 1988. Their motion for leave to file an amended answer to plaintiff's complaint which was filed on January 8, 1987, during the pendency of the appeal, also remains pending.

## I.

THE COURT WILL GRANT THE FEDERAL DEFENDANTS LEAVE TO AMEND THEIR ANSWER TO PLAINTIFF'S COMPLAINT BECAUSE PLAINTIFF HAS NOT DEMONSTRATED THAT SHE WILL BE PREJUDICED.

 Plaintiff explicitly argues that defendants should not be granted leave to

---

**2.** In *Barr,* the Supreme Court held that the Acting Director of the Office of Rent Stabilization was immune from liability to suit for libel arising out of actions taken "within the outer perimeter of [his] line of duty." *Barr,* 360 U.S. at 575, 79 S.Ct. at 1341.

**3.** Defendants filed a petition for rehearing with the Court of Appeals inviting the Court of Appeals "to extend the absolute immunity rule of *Barr v. Matteo,* 360 U.S. 564 [79 S.Ct. 1335, 3 L.Ed.2d 1434] (1959), to all lower-ranking federal officers of limited discretion, particularly to all federal law enforcement officers 'on the beat.'" *See Martin v. Malhoyt,* 833 F.2d 1049, 1050 (D.C.Cir.1987). The Court of Appeals denied the petition because of the lack of Supreme Court precedent on this issue and the likelihood that guidance from the Supreme Court would soon be forthcoming. The Court of Appeals also noted that it "anticipate[d] that [this] Court [would] await the Supreme Court's decision in *Westfall v. Erwin* before adjudicating the common law claims remaining in the case." *Id.*

amend their answer so as to add the defenses of *res judicata* and collateral estoppel because they should have raised these defenses when they filed their original answer on August 14, 1986. Plaintiff also implicitly argues that laches should bar defendants from raising these defenses at this late date. *See Plaintiff's Opposition To Federal Defendants' Motion for Leave to File an Amended Answer.*

It is true that Fed.R.Civ.P. 8(c) states that a party "shall set forth" affirmative defenses, including estoppel and *res judicata,* in its answer. Rule 15(a) of the Federal Rules of Civil Procedure, however, provides that parties may amend their pleadings with leave of Court and such leave "shall be granted freely when justice so requires." Moreover, neither *res judicata* nor collateral estoppel are among the defenses which under Fed.R.Civ.P. 12(h) are waived if not raised in the original pleading.

Delay counsels against allowing leave to amend only if plaintiff will be prejudiced as a result of such an amendment. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1488 at 439 (1971). Plaintiff has not shown that she will be prejudiced by defendants' amending their answer so as to add the defenses of *res judicata* and collateral estoppel. Accordingly, the Court will grant defendants' leave to file an amended answer to plaintiff's complaint.

### II.

THE COURT FINDS THAT THE FINDINGS OF THE AAP ARE ENTITLED TO PRECLUSIVE EFFECT UNDER DISTRICT OF COLUMBIA LAW; HOWEVER, THE COURT WILL DEFER RULING ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT UNTIL THE OHA COMPLETES ITS REVIEW OF THE AAP'S FINDINGS.

After plaintiff received notice from the Metropolitan Police Department ("MPD") that the Department intended to remove her from the police force because of her arrest and the events surrounding it, plaintiff requested a review of this decision by the MPD Adverse Action Panel. In response to plaintiff's request, an adversary hearing was held before the AAP at which plaintiff was represented by counsel, plaintiff had the opportunity to cross-examine witnesses against her and present witnesses on her own behalf. Detailed findings of fact and conclusions of law were made at the conclusion of the proceeding. The AAP found that plaintiff had been properly arrested and that she was not the victim of any misconduct before, during, or after the arrest. The question the Court must now decide is whether the doctrine of collateral estoppel precludes plaintiff from relitigating in this Court the factual determinations made by the AAP.

The factual findings of the AAP are entitled to the same preclusive effect in this Court as they would receive in the District of Columbia courts as long as the AAP was " 'acting in a judicial capacity ... resolve[d] disputed issues of fact properly before it which the parties had an adequate opportunity to litigate.' " *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).

Plaintiff does not seem to argue that she lacked a full and fair opportunity to litigate her case at the administrative level, nor does she seem to dispute that the AAP was acting in a "judicial capacity." What plaintiff argues instead is that the AAP's decision would not be entitled to preclusive effect in the District of Columbia courts and, therefore, a federal court also cannot give it preclusive effect. In particular, plaintiff contends that the District of Columbia courts would not give the findings of the AAP preclusive effect because the Office of Employee Appeals ("OEA") is conducting a *de novo* review of the findings of the AAP.[4] In sum, plaintiff con-

---

4. The procedure for filing an appeal with the OEA is set forth at D.C.Code § 1–606.3. Plain-

tiff's appeal to the OEA has been bifurcated. Plaintiff originally asked for a *de novo* review of

tends that "pursuant to the District of Columbia's own regulatory scheme, the findings of the AAP are a nullity." *Plaintiff's Opposition to the District of Columbia and Federal Defendants Separately Filed Motions or For Summary Judgment* at 13.

Plaintiff mischaracterizes the weight that the AAP's findings should be accorded. The fact that plaintiff may request a *de novo* review of the AAP's findings is really a distinction without a difference. The OEA or the District of Columbia Superior Court cannot review plaintiff's claims on a completely clean slate without any deference to the AAP's findings even though they may hear evidence *de novo* in lieu of conducting a record review. The OEA is not entitled to substitute its judgment for that of the AAP. Like the Merit Systems Protection Board, its federal counterpart, the OEA's role is "simply to ensure that 'managerial discretion has been legitimately invoked and properly exercised.'" *Stokes v. District of Columbia,* 502 A.2d 1006, 1009–1110 (D.C.App.1986) (quoting *Douglas v. Veterans Administration,* 5 MSPB 313, 328, 5 M.S.P.R. 280, 301 (1981)). In fact, "the OEA's own regulations state that it will uphold any agency decision unless (1) it is unsupported by substantial evidence, (2) there was harmful procedural error, or (3) it was not in accordance with law or applicable regulations." *Id.* (citing 27 D.C.Reg. 5449 (1980)).

Moreover, the fact that the OEA or the Superior Court may conduct a *de novo* review of the AAP's findings has no bearing on the preclusive effect to which these findings are entitled in the District of Columbia courts. Under District of Columbia law, "the principles of administrative collat-

eral estoppel (issue preclusion) ... apply when '[t]he agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *City Wide Learning v. William C. Smith & Co.,* 488 A.2d 1310, 1313 (D.C. App.1985) (quoting *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). Plaintiff does not dispute that the AAP was acting in a "judicial capacity" and that she had an adequate opportunity to litigate disputed issues of fact. Accordingly, District of Columbia law would accord the findings of the AAP preclusive effect.

Although the pendency of plaintiff's appeal before the OEA does not undermine the preclusive effect of the AAP's findings, the Court of Appeals warned this Court that entering a judgment based upon administrative findings that are being appealed "risks denying relief on the basis of a judgment that is subsequently overturned." *Martin v. Malhoyt,* 830 F.2d at 264–65. The Court of Appeals advised this Court that "care should be taken in dealing with judgments that are final, but still subject to direct review ... particularly where appeals from administrative adjudications are in progress." *Id.* To avoid the risk of denying relief on the basis of a judgment that may be subsequently overturned, the Court of Appeals recommended that this Court "defer consideration of the preclusion question until the appellate proceedings [before the OEA] are concluded." *Id.* at 265. Accordingly, this Court will postpone considertion of defendants' motion to dismiss or, in the alternative, for summary judgment until the OEA has completed its review of plaintiff's claims.

---

only the administrative findings relating to the events preceding her arrest. She lost that appeal on March 11, 1988. Plaintiff has now requested a *de novo* rather than a record review of the remainder of the AAP's decision.

It is worth noting that plaintiff contends that the AAP proceedings "smack of unfairness" because the "Panel members of the AAP have a stake in the outcome." Plaintiff made a similar argument to the Court of Appeals. *Martin v. Malhoyt,* 830 F.2d at 264 n. 89. The Court of Appeals did not evaluate plaintiff's claim of bias

because she "cryptically" made this allegation without any elaboration as to how "systematic bias taint[ed] the AAP's findings." *Id.* If the Court understands plaintiff correctly, the OEA will cure any taint that plagues the AAP's findings. Plaintiff asserts that "[t]he OHA hearings are not similarly infected [because] OEA officers are not 'beholdin' to their employers." *Plaintiff's Opposition to the District of Columbia and Federal Defendants Separately Filed Motion to Dismiss or For Summary Judgment* at 14 n. 8.

**307**

CONCLUSION

At this stage in this case's long history, the only claims that remain for the Court's resolution are those against Officer Stover, in his individual capacity, for violation of 42 U.S.C. § 1983 and for various common law torts and those against the United States for violations of the Federal Tort Claims Act and for equitable relief. The Supreme Court's decision in *Westfall v. Erwin,* now makes it clear that Officer Stover will not be entitled to absolute immunity for the common law tort claims brought against him because he was not performing a discretionary function when he arrested plaintiff. The Court will not, however, resolve these outstanding claims until plaintiff's appeal to the OEA is concluded. Although the Court concludes that the findings of the AAP would be entitled to preclusive effect in the District of Columbia courts, the Court does not want to run the risk of denying plaintiff relief on the basis of a judgment that may be subsequently overturned.

The Court will issue an Order of even date herewith memorializing these findings.

ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 20th day of December, 1988,

ORDERED that the federal defendants' motion for leave to amend their answer so as to add the defenses of *res judicata* and collateral estoppel shall be, and hereby is, granted; and it is

FURTHER ORDERED that the Court shall stay its ruling on defendants' motion to dismiss or, in the alternative, for summary judgment for a period of ninety (90) days on the condition that plaintiff shall advise the Office of Employee Appeals that the Court expects a decision from that Agency within that period of time so that this Court may proceed to a final disposition of this case; and it is

FURTHER ORDERED that plaintiff and her counsel shall be, and hereby are, directed to notify the Office of Employee Appeals of the contents of this Order and the deadlines established herein for hearing and making a final determination of the issues of fact and law before it.