Douglas WILCOX, et al., Plaintiffs,

v.

UNITED STATES of America, et
al., Defendants.

Civ. A. No. 77–0105.

United States District Court,
District of Columbia.

Feb. 25, 1981.

Edward Dev. Bunn, Bailey's Crossroads, Va., for plaintiffs.

R. Craig Lawrence, Asst. U. S. Atty., James J. Stanford, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Pending before the Court are two motions for summary judgment, one filed by the federal defendants, the United States government and nine individuals, and one filed by the District of Columbia. Based on an examination of the pleadings, the memoranda of points and authorities, the affidavits, and the discovery materials filed with this Court, it is apparent that no material factual issues remain in dispute and that all defendants are entitled to summary judgment.

On January 23, 1976, the plaintiffs voluntarily accompanied two agents of the Federal Bureau of Investigation to the Washington Field Office for questioning. The FBI had received a report that the plaintiffs had sought at two banks in Virginia to change currency that the bank tellers noticed to be part of a ransom paid in the Alan Bortnick kidnapping case then under investigation. During the course of the questioning, the plaintiffs gave the agents conflicting accounts concerning the source of the money they changed at the banks. Based on the inconsistency, the agents arrested the plaintiffs, suspecting them of violating 18 U.S.C. § 1202.[1] After detaining them overnight, the plaintiffs were brought before a Judge of the Superior Court of the District of Columbia, who asked to see the warrants for the plaintiffs' arrest. FBI agents and officers of the Metropolitan Police Department explained that

the warrants were issued in the Eastern District of Virginia, and had not yet been received in Washington over the Telex machine. The Judge ordered the plaintiffs released from custody; almost immediately, federal officials attempted to rearrest the plaintiffs, but the Judge ordered the officers not to arrest them inside the Courthouse. As soon as the plaintiffs left the Courthouse, federal marshals arrested them on reliance of the federal warrant for their arrest issued in the Eastern District of Virginia at 12:14 p. m. on January 24, 1976.

The plaintiffs were detained until January 26, when a United States Magistrate found that the plaintiffs had been arrested on probable cause and set a $50,000 bond for each plaintiff. On February 3, 1976, the plaintiffs waived their right to a hearing in the District of Columbia so that they would be transferred to the Eastern District of Virginia. On March 26, 1976, the plaintiffs testified before a federal grand jury investigating the kidnapping and all charges against them were dropped.

The plaintiffs filed their complaint on January 21, 1977, and amended it on January 6, 1978. They alleged that their fourth and eighth amendment rights had been violated and that the federal government and the government of the District of Columbia had intentionally inflicted emotional distress, arrested and imprisoned them falsely, defamed them, invaded their privacy, and negligently supervised the participating governmental officials. In mid-1979, this case was transferred to this Judge from another Judge of this Court pursuant to random assignment, and on January 31, 1980, an order issued granting the motion of the federal defendants for summary judgment as to claims under 42 U.S.C. §§ 1983, 1985 and directing the plaintiffs to plead with greater specificity those claims constituting violations of the plaintiffs' constitutional rights. The Court also dismissed as to the defendant District of Columbia all claims except those for false arrest and

---

1. That statute makes it a felony to possess or transact money paid as part of a ransom to a kidnapping.

imprisonment. Finally, the Court reserved for trial a ruling on the applicability of the statutes of limitations to the claims against the federal defendants.

Plaintiff filed a second amended complaint on February 8, 1980. The complaint is alike in almost every respect to the first amended complaint, the only differences being in the second amended complaint one paragraph referring to the statute of limitations question and the omission of 42 U.S.C. §§ 1983, 1985 as causes of action. *See* Second Amended Complaint ¶ 8; *Compare* Second Amended Complaint ¶¶ 9–20 *with* First Amended Complaint ¶¶ 8–19. The plaintiffs continue to allege violations of their constitutional rights and the same common law torts.

The plaintiffs argue that summary judgment is inappropriate because of a number of allegedly material factual issues, among which are: the conditions of their detainment in the District of Columbia jails, whether they were advised of their rights, the procedures of identification to which they were subjected, and other violations of their interests. The defendants contend that because the arrests were based on probable cause, they cannot be liable in damages for any tortious conduct. They further maintain that parts of the complaint fail to state a claim under Fed.R. Civ.P. 12(b)(6), and that to the extent that the constitutional claims are all predicated on a false arrest, the arresting officers and the government are immune from suit because the arrests were based on probable cause.

The plaintiffs' failure to plead with specificity the grounds for alleging that their constitutional rights were violated continues to be troubling. The Court directed the plaintiffs to plead their constitutional violations with greater detail in its order of January 31, 1980. See *Memorandum Opinion* at 4, n. 2, *Wilcox v. United States*, Civ. A. No. 77–0105, Jan. 31, 1980. Nonetheless, the plaintiffs have not done so, although in their memoranda in opposition to the summary judgment motions by the defendants, they recite some alleged constitutional vio-

lations related to a claim for damages in an action similar to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Accordingly, the plaintiffs' allegations of constitutional violations will be considered as reflected in the order of January 31, 1980, i. e., limited to the claims for false arrest and imprisonment and for assault and battery associated with the arrest.

As to the claims against all defendants for false arrest and imprisonment and for assault and battery, the defendants contend that both the first arrest on January 23, 1976, and the second arrest on January 24, 1976, were predicated on probable cause. The plaintiffs maintain that they were denied their constitutional rights as to the first arrest, and that as to the second arrest, the Superior Court Judge had actually dismissed the case against the plaintiffs.

■ The tort action of false arrest, both in common law and as a constitutional variant, requires resolution of whether the arresting officer was justified in ordering the plaintiffs' arrest. If so, the conduct of the arresting official is privileged and the action fails. *Dellums v. Powell*, 566 F.2d 167, 175 (D.C.Cir.1977), *cert. denied* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

■ Without a warrant, the law of the District of Columbia, *Clarke v. District of Columbia*, 311 A.2d 508, 511 (D.C.App.1973) reflects that the unlawfulness of a detention is presumed and the burden shifts to the defendant to justify the arrest. *See, Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Pierson v. Ray*, 386 U.S. 547, 556–557, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967).

■ Justification for arrest and imprisonment can be established by showing there was probable cause for arrest of plaintiffs on the grounds charged. *Shaw v. May Department Stores Co.*, 268 A.2d 607, 609 (D.C. App.1970). If the arresting officer had reasonable grounds to believe a crime had been committed and was prompted by good faith in securing plaintiffs' arrest for the charge,

justification for the arrest would be demonstrated.

■ The constitutional tort action is molded by the common law where local and federal enforcement officers have been sued for false arrest/imprisonment. The defendants have available a qualified immunity defense, a privilege based on good faith and reasonableness, which they must prove. *Dellums v. Powell, supra,* at 175–176. *See also, Lucas v. United States,* 443 F.Supp. 539 (D.D.C.1977) *aff'd without opinion,* 590 F.2d 356 (D.C.Cir.1973). Moreover, where officers have in good faith sought the advice of counsel, that advice is also a defense. *Dellums,* 566 F.2d at 185.

The Supreme Court has clarified the focal considerations for a determination of this issue:

It is the existence of reasonable grounds for the belief [that cause for action existed] formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Scheuer v. Rhodes,* 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974).

■ To establish reasonableness, policemen are entitled to show reliance "on traditional sources for the factual information on which they decide and act", *Id.,* at 246, 94 S.Ct. at 1691. "To establish good faith, an official must show that he was 'acting sincerely and with a belief that he is doing right', *Dellums, supra,* at 176, citing *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

The 1974 amendment to the Federal Torts Claims Act, codified at 28 U.S.C. § 2680(h) (1976), substantially enlarges the United States' liability for its employees' torts by permitting claims with regard to the acts of investigative or law enforcement officers of the United States Government for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."

The Senate report on this amendment to § 2680(h) emphasized its applicability to the federal government for the acts of its law enforcement officers who, acting within the scope of their employment and under color of federal law, commit any of the above torts, in that

This provision should be viewed as a counterpart to the *Bivens* case and its progeny (sic), in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved.

Let us then review the undisputed material issues of fact, applying those cardinal principles of law above discussed.

■ As to the first arrest, on the report of alert bank tellers, which included the license number of plaintiffs' automobile, the FBI agents had reasonable grounds to investigate further a potential law violation. When those agents questioned the plaintiffs concerning the currency that the plaintiffs sought to change at two banks in Virginia and the plaintiffs gave conflicting stories about where they had received the money, the agents sought the counsel of an Assistant United States Attorney for the Eastern District of Virginia, who advised that the plaintiffs be arrested on suspicion of violating the federal law that makes it a felony to possess ransom money, 18 U.S.C. § 1202. *See* Declarations of James R. Pledger, Thomas W. Richardson, and William P. O'Keefe, ¶¶ 2–3. The plaintiffs were then arrested. Probable cause was established by the good faith and reasonableness of the law enforcement officers' actions. In *Wade v. District of Columbia,* 310 A.2d 857 (D.C. 1973), the District of Columbia Court of Appeals held that the defense of probable cause is available to the individual officers and to their governmental entity against a claim for false arrest. The Court declared, "[T]he officer may defend on the merits by proof that only reasonable force was used to maintain the arrest and that the arrest

was made in good faith with probable cause, under a statute he reasonably believed to be valid." *Id.* at 862. *See also Pierson v. Ray, supra; Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339 (2d Cir. 1972); *Lucas v. United States, supra.*

As to the rearrest of the plaintiffs, made after the case was "no papered" in Superior Court, the defendants contend that the arrest was based on the outstanding federal warrant for the arrest of the plaintiffs issued at 12:14 p. m. on January 24, 1976. That arrest warrant was only transmitted by Telex to the District of Columbia after the presentment before the Judge in Superior Court due to a mechanical failure. *See* Defendant's Exhibit 1–J. *See also* Federal Defendants' Answers to Interrogatories, Exhibits C, D (filed August 18, 1977). The plaintiffs argue, unpersuasively, that the Superior Court Judge who ordered the plaintiffs released had in effect dismissed the entire case and that his ruling was *res judicata* to the second arrest.

■ There are no factual issues in dispute relating to the question of probable cause for the second arrest. The plaintiffs were arrested at approximately 2:00 p. m., less than two hours after the issuance of the warrant in Virginia. Although the federal agents and marshals did not have a copy of the outstanding warrant, they acted in reliance on it. Federal marshals are authorized to arrest individuals when the marshals have a reasonable belief that a warrant is outstanding for their arrest, 18 U.S.C. § 3053 (1976). The arrest of the plaintiffs following the proceedings in Superior Court then was founded on probable cause, there being a reasonable belief that the plaintiffs had violated 18 U.S.C. § 1202.[2]

■ As to the plaintiffs' claim for assault and battery, that allegation is directly linked to the claim for false arrest. Probable cause is a defense to a claim for assault and battery in connection with an arrest so long as the force used in making the arrest was reasonable. *Wade v. District of Columbia, supra.* Following *Bivens, supra,* the Fourth Circuit has also held that the probable cause standard for civil liability is a partially subjective one, *Hill v. Rowland,* 474 F.2d 1374 (1973). Plaintiffs make no allegations in their complaint that would lead a Court to find that unreasonable force was used. In light of the resolution of this case, it becomes unnecessary to determine whether the assault and battery claim might have withstood summary judgment, had the arrests been deemed unlawful. There being probable cause to make both the arrest and rearrest and the complaint not stating facts sufficient to constitute a separate claim for assault and battery unrelated to the arrests, the motion for summary judgment will be granted as to this claim in favor of the defendants.

■ The allegations of common law torts associated with the arrest and rearrest of the plaintiffs are subject to the probable cause analysis, and, accordingly, are also resolved in favor of the defendant on the motion for summary judgment. The plaintiffs' allegations of intentional infliction of emotional distress, defamation, and invasion of privacy all are directly intertwined with the claims of false arrest and false imprisonment. *See* Second Amended Complaint ¶¶ 4, 6, 8, 9, 11, 16, 19. A legal arrest cannot be the basis for tortious conduct unless those torts were committed independently, and the plaintiffs' complaint alleges these torts only in the sense that they were arrested and suffered great emotional trauma and were subjected to publicity. Moreover, as to the allegation of negligent hiring and supervision of FBI agents and the federal marshals, the conclusion that the arrests were predicated on probable cause absolves the government from any negligence liability as well, since the agents and the marshals committed no wrongful act in their arrest of the plaintiffs.

2. Because the Court has found as a matter of law that the arresting officers had probable cause to make the two arrests, the entire claim against the District of Columbia will be dismissed by attached order since the only claims still at issue against the District were false arrest and false imprisonment.

Plaintiffs' claims could have been dismissed, additionally, for failure to state a claim even assuming that all of the allegations are true. Fed.R.Civ.P. 12(b)(6), as reflected below.

■ The plaintiffs' claim that the defendants caused emotional distress is insufficient in the absence of alleged facts that would constitute the sort of conduct that is necessary to give rise to liability for intentional infliction of emotional distress. In *Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980), the District of Columbia Court of Appeals discussed at length the necessary proof that the plaintiff must proffer in order to recover for this type of tortious conduct. The conduct must be beyond the bounds of decency and "regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1076, quoting Restatement (Second) of Torts § 46, comment d. This complaint does not state such occurrences that would give rise to a claim under this standard of extreme or outrageous conduct. *See also Jackson v. District of Columbia*, 412 A.2d 948, 956–57 (D.C.1980).

■ The allegation of defamation is resolved quickly. Under federal law, the federal government is immune from liability for defamation, Federal Torts Claims Act, 28 U.S.C. § 2680(h) (1976), *supra.* As for the individual defendants, they also are absolutely immune from liability for common law defamation if they act within the outer perimeters of their duties, "within the ambit of [their] discretion." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution*, 566 F.2d 289 (D.C.Cir. 1977) (en banc), *cert. denied* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). *See also Sami v. United States*, 617 F.2d 755, 768 (D.C.Cir.1979); *cf., Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ Lastly, the plaintiffs allege that they were denied protections owing to those suspected of criminal conduct, claiming *inter alia*, that they were not read or given their *Miranda* rights. The plaintiffs, however, on January 23, 1976, signed waiver forms relinquishing their rights to remain silent and, to an attorney at that time, and declaring that they were ready to answer questions. *See* Plaintiff's Exhibits 3–A, B, & C. The plaintiffs further allege that they were not in a timely manner presented to a magistrate for a probable cause determination and the setting of bond. It is undisputed that the plaintiffs were arrested on the evening of January 23, 1976 and presented before the Superior Court Judge on January 24, 1976. Then the plaintiffs were rearrested on the afternoon of January 24, 1976 (a Saturday) [after the Superior Court of the District of Columbia's court-imposed cut-off time for presentment] and presented before a federal magistrate on Monday morning, January 26, 1976, the first opportunity to do so. Under Rule 5(a) of the Federal Rules of Criminal Procedure, an arrested person has the right to be taken before a magistrate for arraignment "without unnecessary delay." *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C.Cir.1977), *United States v. Boyer*, 574 F.2d 951 (8th Cir.), *cert. denied* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978).

Plaintiffs do not refute defendants' joint supplemental statement of material facts submitted December 3, 1980 pursuant to this Court's inquiry as to the impact of *Wylie, et al. v. District of Columbia, et al.*, 634 F.2d 1356, 1980.

Defendants have asserted that the scheduling of presentments are controlled by the courts, that none of the defendants had any control over those schedules and that plaintiffs were presented to the Superior Court Judge and the Magistrate, respectively, at the earliest possible times, i. e., at the next scheduled times for presentments. *See* Declaration of E. Lawrence Barcella, Jr. ¶¶ 2–5.

Plaintiffs did not file their opposition until February 3, 1981, having requested an extension for this response on January 23, [six weeks' untimely, yet granted] to the court's original due date of December 15. Plaintiffs' February 3 response is still unclear in part but without supporting documentation, counsel avers that the defend-

ants could have requested a judge or magistrate be made available but did not do so. Plaintiffs do not suggest when these persons should have been available to conduct the proceedings. Plaintiff then moved to compel further statements from defendants, a matter denied by separate Order this date.

The delay here has been explained as necessary under presentment schedules established and controlled by the courts, a control not available to any law enforcement agency or individual designated here, either federal or the District of Columbia. In both instances of presentment then before the Judge or Magistrate, the plaintiffs were presented by law enforcement officials at the earliest possible time.

There is yet a further reason for recognizing that the plaintiffs' claim here does not state a cause of action. In the several opportunities that the plaintiffs have had to amend their complaint, even after completion of considerable discovery, they have yet to specify to which individual federal defendants they were imputing liability for particular actions. "A complaint against public officials claiming deprivation of constitutional rights must detail the basis of that claim." *Black v. United States*, 534 F.2d 524, 528 (2d Cir. 1976).

Based on these undisputed facts, the plaintiffs' right to prompt presentment was not violated, and summary judgment is appropriate for the federal defendants on this question.

The case will be dismissed with prejudice.